Matthias, J.
This proceeding comes to this court on error from the public utilities commission, before which it was instituted by the coal-mining companies named here as defendants in error to procure an order of the commission requiring the Hocking ‘Valley Railway Company, hereafter referred to as the Railway Company, and the Hocking-Sunday Creek Traction Company, which operates an interurban electric road extending from Nelsonville to Athens, and which will hereafter be referred to as the Traction Company, to establish joint through rates on coal from the mines of the several coal companies located along the line of the Traction Company at points varying from six one-hundredths of a mile to three and eighty-four hundredths miles from the line of the Railway Company, destined to points in this state on the line of the Railway Company.
Issue was made and the matter was heard by the commission; as a result whereof the commission ordered the Railway Company and the Traction Company to establish such joint through rates as should *45 not exceed by more than'eight cents per ton the group rates contemporaneously maintained from the mines on the Bailway Company in the Hocking district. And the commission overruled separate applications for rehearing filed by the Bailway Company and the Traction Company.
The commission found, and the record warrants the finding, that the road of the traction line is laid with rails sufficiently heavy and that the road is sufficiently ballasted to permit the transportation, of car loads of coal; that the traction company has freight tariffs on file with the commission and is actually engaged in transporting coal and other freight; and that it is practical to interchange empty and loaded coal cars between the lines of the two companies without endangering the equipment, tracks or appliances of either. The lines of the railway company and the traction company are of the same gauge and for some time have been connected by a transfer track. In fact, for several years the traction company has been delivering cars of coal from the mines of the several complainant companies to the railway company over the interchange track connecting the tracks of the two companies at Nelsonville, for which the charge of the traction company varies from $8.45 to $25.50 per car, depending upon the length of the haul, and such shipments are subject to the so-called Hocking district rate from Nelsonville to points of destination.
The primary legal question presented is that arising from the challenge of the jurisdiction of the public utilities commission over the subject of joint rates affecting a railroad company and an interur *46 ban company, and its authority to make any order whatever requiring the establishment of any joint rate or rates by and between such companies. The jurisdiction of a public utilities commission is conferred by statute, and it has only such authority as is thus expressly delegated. A consideration of the question here presented, therefore, calls for an examination of the statutory provisions touching the subject.
Section 540, General Code, provides as follows: “Whenever railroads refuse or neglect to establish a joint rate or rates for the transportation of persons or property, the commission may, upon notice to the railroads and after opportunity to be heard, fix and establish such joint rate or rates. If the railroads party thereto fail to agree upon the apportionment thereof within twenty days after service of such order, the commission may, upon a like hearing, issue a supplemental order declaring the apportionment of such joint rate or rates which shall take effect of its own force as part of the original order.”
This section and Section 522, General Code, as well, were a part of what was known as the Railroad Commission Act, and were carried into the present public utilities law. The latter section provides as follows:
“Steam railroad companies as between themselves, and interurban and electric railroads as between themselves, shall afford reasonable and proper facilities for interchange of traffic between their respective lines, for forwarding and delivering passengers and property, and shall transfer and deliver without unreasonable delay or discrimination cars, *47 loaded or empty, freight or passengers, destined to a point on its own or connecting lines; but precedence over other freight may be given to live stock and perishable freight.”
Although at the time of the enactment of these sections there was no requirement of an interchange of traffic between railroad companies and interurban companies, it was contended by the complainants below, which was sustained by the commission, that the distinction originally made has been abolished by subsequent legislation, and that the interchange and establishment of joint rates may be required by the commission between railway lines and interurban lines by virtue of such subsequent legislation.
Section 614-42, General Code, authorizes the commission, upon finding the existence of certain facts and conditions therein enumerated, to require a railroad company and an interurban company to connect their tracks so as to admit the passage of oars from one road to the other with facility, and further provides that “when such connection is made, the railroads parties thereto, according to their respective powers, shall afford all reasonable and proper facilities for the interchange of traffic between their respective lines.”
Such track connection between the railway company and the traction company has heretofore been established and is maintained. There is and can be no question of the authority of the commission, under the express language of the statute, to make and enforce such requirement.
The subsequent legislation above referred to, which is relied upon as conferring authority upon *48 the public utilities commission to go farther and require the establishment of joint rates between a railroad company and an interurban company, is contained within the provisions of Section 501, General Code, which, as amended in' 1911 (102 O. L., 549), prescribe that the term “railroad,” as used in that chapter, “shall mean and embrace * * * interurban railroad companies, and all duties required of and penalties imposed upon a railroad or an officer or agent thereof insofar as they are applicable, shall be required of and imposed upon * * * interurban railroad companies, their officers and agents. The commission shall have the power of supervision and control of * * * interurban railroad companies to the same extent as railroads,” By the act of which such amended section was a part the name “railroad commission of Ohio” was changed to “public service commission of Ohio,” which latter was vested with power and jurisdiction to supervise and regulate “public utilities” and “railroads,” as defined in the act.
While Section 540, as above quoted, was enacted in 1908 (99 O. L., 130), Section 614-42 was first enacted at the same time that Section 501, as above quoted, was amended. It is further to be observed that not only by the provisions of Section 501, but by the clear and express provisions of Section 614-2, interurban companies are now classified as railroad companies, as that term is used in Section 501, General Code. By the provisions of Section 487 et seq., General Code (103 O. L., 804), the public service commission was abolished and was succeeded by the public utilities commission, upon which was con *49 ferred all the rights, authority and powers theretofore delegated to the public service commission.
The conclusion is irresistible that so far as the jurisdiction and authority of the public utilities commission is concerned the distinction previously existing between a railroad company and a so-called interurban company has been completely abolished, and that in their government and. control by the public utilities commission they are all to be regarded as railroad companies. The order of the public utilities commission was therefore within its jurisdiction and was not unlawful. Neither are we able to find from the record before us that such order was unreasonable.
The basis of the complaint before the commission is that though the mines of the complainant are geographically within the territory known as the Hocking district, and though what is known as the Hocking district group or blanket rates on coal, as set forth in the schedules of the Hocking Valley Bailroad Company, apply to all coal within the Hooking district, including that from mines on branch lines of the Hocking Valley railroad^ as-well as mines on or near its main line between Nelsonville and Athens, the complainants are required to pay in addition to such rate a charge of from $8.45 to $25.50 per car, made by the traction company for handling such shipments from the mines of the various complainants to the connection of the tracks of the two companies at Nelsonville, which works a serious and detrimental discrimination against complainants. This contention is borne out by the record.
*50 We cannot sustain the contention of the railway company that such condition must he relieved by these complainants themselves, by the construction of industrial tracks from their respective mines to the line of the Hocking Valley railroad. To do so would require them not only to cross the line of the traction company but also to construct trestle work over low lands and bridge the Hocking river. The very purpose of the law authorizing the public utilities commission to require railroads to make physical connection was to make it thereby possible for the shipping public to procure the benefit of markets on the line of the various roads. These laws were enacted primarily for the benefit of the public. The fact that the traction company does not possess coal cars is not in and.of itself a valid reason for a refusal at this time to require a joint through rate on coal, and cannot now be urged. The matter of furnishing and distributing cars is within the jurisdiction of the public utilities commission, and any controversy arising with reference thereto may be determined by that tribunal, its order, of course, being subject to review by this court.
The order of the commission is affirmed.

Order affirmed.

Marshall, C. J., Wanamaker, Robinson and Jones, JJ., concur.
Day and Allen, JJ., took no part in the consideration or decision of the case.